THE MAYOR AND ALDERMEN OF JERSEY CITY

*v.*

JERSEY CITY WATER SUPPLY COMPANY et al.

[Decided June 2d, 1921.]

Where a city retained $500,000 from the sum due a water supply company under a clause in the company's contract to furnish the city with a water supply system, providing that the sum so retained should be paid to the company whenever the company should deliver to the city a valid release from a certain canal company and its lessee, releasing all their rights to divert the waters of a watershed of a certain river above a proposed reservoir site, "the same to take effect upon their abandonment

CASES IN CHANCERY, 1921.     37

*93 N. J. Eq.*     Mayor, &c.. Jersey City *v.* J. C. Water Sup. Co.

of the navigation of the said canal" between certain points "under legis-
lative sanction," a release of such rights by the canal company and its
lessee reciting "this release to take effect upon our abandonment of the
navigation of the said canal between the points named in the contract
'under legislative sanction,'" was not, no legislative sanction being
shown, sufficient compliance with the contract to justify the payment of
the money so retained.

On pleadings and proofs.

*Messrs. Humphreys & Sumner,* for the defendant Jersey City
Water Supply Company.

*Mr. John Bentley* and *Mr. John Milton,* for the complainant.

Lewis, V. C.

This matter is before the court on a supplemental bill, filed by
the defendant Jersey City Water Supply Company, against the
complainant, the Mayor and Aldermen of Jersey City; and also
against the Fidelity and Deposit Company of Maryland as a party
defendant. Its object is to accomplish the release and payment
to the water supply company of a fund of $500,000, with certain
deductions therefrom, retained and withheld by the city of Jersey
City from the sum due the water supply company under a con-
tract to furnish the municipality with a water supply system,
pursuant to the decree of this court, entered in the original cause
June 4th, 1908, and affirmed, with slight modifications, by the
court of errors and appeals, by its decree dated March 18th, 1910.

The controversy arises out of a provision of the contract be-
tween the city and the water supply company, dated July 8th,
1901, which reads as follows:

"*Fourth.*—Whenever the contractors shall deliver to Jersey City a
valid release from the Morris Canal and Banking Company, and its
lessee, releasing all their rights to divert the waters of the Rockaway
river watershed out of said river above said proposed reservoir site, the
same to take effect upon their abandonment of the navigation of said
canal between Dover and Montville under legislative sanction, for a sum
therein to be named and to be paid upon such abandonment, then there
shall be paid over by Jersey City to said contractors all of said sum of
$500,000, except the amount named in said release, which said last-
mentioned amount the contractors authorize Jersey City to pay to said
Morris Canal and Banking Company and its lessee, upon the actual
abandonment aforesaid."

The water supply company contends that the release called for by the fourth clause of the contract referred to has been delivered in accordance with the provisions quoted; and that, therefore, it is entitled to be paid the money withheld by the city, as above indicated. The city of Jersey City, however, asserts that such a release has not been obtained and delivered to it; and that, therefore, the moneys retained should not be paid over by the city to the water supply company.

The Fidelity and Deposit Company of Maryland, which was the surety on the water company's contract, was made a party to this supplemental bill, so that its rights in the controversy might also be presented and adjudicated, but it has filed no answer, and a decree *pro confesso* has been taken and entered against it.

The proofs show that there has been delivered to the city of Jersey City a release from the Morris Canal and Banking Company and its lessee, which contains, among other things, the following terms:

"We, the said Morris Canal and Banking Co., and Lehigh Valley Railroad Co., lessee of the Morris Canal and Banking Co., in consideration of the premises and of the sum of one dollar to us paid upon the execution of this writing, and to be paid to us upon such abandonment of navigation, have released, and by these presents do release, upon the mayor and aldermen of Jersey City, their successors and assigns forever, all our rights to divert the waters of the Rockaway river watershed out of said river above the proposed reservoir site, mentioned in said supplemental agreement of July 8th, 1901, upon which site there has since been erected a reservoir below Boonton by the Jersey City Water Supply Company, under its contract with Jersey City.

"This release to take effect upon our abandonment of the navigation of the Morris canal between Dover and Montville, under legislative sanction; and upon the payment by the mayor and aldermen of Jersey City to us of the sum of $1.00 as hereinbefore provided upon such abandonment."

This, the water supply company contends, is a release in literal compliance with the express terms of the fourth clause of the contract referred to.

Upon application of the water supply company to settle certain matters referred to in the final decree in the original cause, the release mentioned was received in evidence, and Vice-Chancellor

Stevens was asked to adjudge in the final decree that the release was a sufficient fulfillment of the terms of the fourth section of the contract of July 8th, 1901, and that the sum of $500,000 should no longer be retained by Jersey City, but should be paid over with the rest of the contract price to the water supply company.

Vice-Chancellor Stevens filed an opinion upon this application, which is reported in *78 Atl. Rep. 391,* the material portions of which are as follows:

"I do not think that the decree as it stands should be so modified as to direct the payment of the $500,000 reserved. After giving the contract of July 8th, 1901, considerable study, I am not able to come to the conclusion that the release of May 12th, 1909, is a sufficient compliance with its terms to entitle the water company to the immediate payment of the money. To so hold would be to nullify the general intent of the parties as expressed in the instrument itself; but I do not think that the question should be finally passed upon at this time. If the contention of the water supply company be correct, it would seem that the liability of the Fidelity and Deposit Company, the surety, would or might be considerably increased. If so, the company is interested in the question and should be heard.

"I cannot find among the papers any copy of the condition of this bond, but it would seem from the terms of the contract of July 8th, 1901, that it is under some liability for the flow of the Rockaway up to the limit of seventy millions gallons per diem.

"The question has been informally presented and without any issue framed.

"In a question of such importance the proper course would appear to be to present the matter by bill and leave to file it should be reserved."

Later, the matter again came before this court upon petition and affidavits of the water supply company, whereby it again sought to obtain a decree for the payment of the $500,000 withheld by the city. After hearing upon that petition, Vice-Chancellor Stevens filed the following opinion:

"I have carefully considered the petition presented by the water company, asking leave to introduce evidence relative to the

release of the Morris Canal Company to Jersey City, dated May 12th, 1909. The question is of much importance, and the construction of the supplemental contract of July 8th, 1901, as far as it bears upon that release, not without difficulty.

"It seems to me that this new controversy, involving the large sum of $500,000, should be determined on bill or supplemental bill; and that the signing of the final order or decree in this suit should not be postponed until the final determination of that controversy. The bill was filed August 1st, 1905. The final decree was made on June 4th, 1908, and, except as to an unimportant detail, affirmed on March 18th, 1910; and so it appears that the question of the sufficiency of the release, which it is now sought to interject into the present suit, is one which did not arise until nearly a year after the issues made by the pleadings in this suit had been passed upon in this court. To introduce at this stage of the cause an entirely new issue, whose final determination will necessarily consume much time, would be not only irregular, but unjust to complainant, whose rights have been established by the court of last resort."

From this decree, which was entered on or about November 15th, 1910, an appeal was taken by the water supply company to the court of errors and appeals, and was there affirmed, in an opinion which is reported in *81 Atl. Rep.* (at *p. 1134*), which reads as follows:

"*Per curiam*—So much of the decree as is involved in the present appeal will be affirmed upon the opinion delivered by the vice-chancellor in the court below. We think that the petition of the appellant, praying that the making of the final decree in this cause be withheld until the determination of the question whether the $500,000 authorized by the third item of the contract between the parties, to be retained by the city until the performance by the contractor, of one or other of the conditions therein recited, is now due and payable to the contractor, was properly refused, and we rest this conclusion upon the ground set forth in the memorandum opinion of the learned vice-chancellor, delivered in the disposing of the application. The order denying the application will also be affirmed."

I cannot see that the situation, as presented by this supple-

CASES IN CHANCERY, 1921. 41

*93 N. J. Eq.* Mayor, &c., Jersey City *v.* J. C. Water Sup. Co.

mental bill, differs in any way from the situation as previously passed upon by this court and the court of errors and appeals.

Vice-Chancellor Stevens held that he was not able to come to a conclusion that the release of May 12th, 1909, was a sufficient compliance with the terms of the contract of July 8th, 1901, to entitle the water company to the immediate payment of the money. It is true that he said that the matter was informally presented to him, and that it should be brought on by bill or supplemental bill, owing to its importance; but he also speaks of the matter being premature, and to hold, he says, that the release is a sufficient compliance with the terms of the contract, would be to nullify the general intent of the parties as expressed in the instrument itself.

I am inclined to think that the views heretofore judicially expressed, as herein set forth, are binding upon me on this application.

The city's real purpose, doubtless, was to acquire the flow of the watershed complete and free from claims or rights that might conflict with its untrammeled enjoyment of that unrestricted supply, required for the uses of its thickly-settled area and highly-congested population.

It is most likely that the city, in assenting to paragraph 4 referred to, did not have any intention of relinquishing any of its rights under the contract. It allowed the provision to meet the situation involved, but not to give up its valuable rights. Surely, it did not contemplate the production of a release that was *ultra vires* and meaningless, lacking legislative sanction (and with which counsel for the water company in their closing argument have intimated the city may have to be satisfied), but rather, it seems to me, one which would effectually foreclose in the city's favor whatever rights and claims might in any way and at any time be asserted against its paramount rights in the complete flow of the watershed.

Until such rights and claims have been thus effectually extinguished and released, and acquiesced in by legislative sanction, I think that the true intent and meaning of the fourth paragraph has not been met and complied with and the application to release the $500,000 fund retained by the city is premature. The supplemental bill will therefore be dismissed.